[No. 35254. Department Two. September 1, 1960.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM ARCHIE REED, *Appellant*.[1]

[1]Reported in 354 P. (2d) 935.

*Allan Lane Carr* and *Stephen C. Watson,* for appellant.

*Charles O. Carroll, Anthony Savage, Jr.,* and *Jack B. Regan,* for respondent.

DONWORTH, J.—Appellant was charged in the superior court for King county with the crime of burglary in the second degree, committed as follows:

"He, the said WILLIAM ARCHIE REED, in the County of King, State of Washington, on or about the 16th day of April, 1958, with intent to commit a crime therein, willfully, unlawfully and feloniously did enter the dwelling of one Eugene F. Griffin, located at 2522 33rd South, in the City of Seattle, said county and state;"

He pleaded not guilty, and his trial before the court, sitting with a jury, resulted in a verdict of guilty on November 22, 1958.

Six months later, and prior to the imposition of sentence, the prosecuting attorney filed a supplemental information pursuant to RCW 9.92.090 charging appellant with being an habitual criminal. He pleaded not guilty to this supple-

mental information and was tried before another judge and another jury. At this trial, he was represented by his present counsel; other counsel appeared for him in the burglary trial. This second jury affirmatively answered the following two questions submitted to them:

"(1) Was this defendant, under the name of William Reed on or about the 7th day of April, 1939, convicted of the crime of Burglary in the Second Degree, in the Superior Court of the State of Washington, in and for the County of Snohomish?

"(2) Was this defendant, under the name of William A. Reed, on or about the 12th day of August, 1952, convicted of the crimes of Grand Larceny and Burglary in the Second Degree, in the Superior Court of the State of Washington, in and for the County of Whatcom?"

Thereafter, judgment and sentence was imposed by a third judge of the superior court, based on the aforesaid proceedings, whereby appellant was sentenced to imprisonment in the state penitentiary for the term of his natural life.

Appellant in his brief specifies seven assignments of error. The first three relate to his trial on the second-degree burglary charge, and the remaining assignments, except the fifth, are concerned with the habitual criminal proceeding. The fifth assignment is directed to both proceedings. These alleged errors are stated as follows:

"I. THE COURT ERRED IN ADMITTING EXHIBIT 8 INTO EVIDENCE.

"II. THE COURT ERRED IN GIVING INSTRUCTION NO. 8 (BURGLARY IN THE SECOND DEGREE TRIAL).

"III. THE COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE (BURGLARY IN THE SECOND DEGREE TRIAL).

"IV. THE COURT ERRED IN ADMITTING EXHIBITS 14, 15, 16 AND 17 INTO EVIDENCE (HABITUAL CRIMINAL TRIAL).

"V. THE COURT ERRED IN DENYING APPELLANT MOTIONS FOR ARREST OF JUDGMENT AND FOR NEW TRIALS (BURGLARY TRIAL; HABITUAL CRIMINAL TRIAL).

"VI. THE COURT ERRED IN ENTERING JUDGMENT THAT APPELLANT WAS GUILTY OF BURGLARY IN THE SECOND DEGREE (HABITUAL CRIMINAL).

"VII. The Court Erred In Sentencing Appellant to Life Imprisonment As An Habitual Criminal."

In considering the first three assignments relating to the trial on the burglary charge, we do not deem it necessary to set forth the substance of the evidence which was placed before the jury. There is no contention that the evidence admitted by the trial court was not sufficient, if believed by the jury, to support a verdict of guilty.

We shall confine our discussion of the evidence to the parts thereof which are pertinent to the errors assigned.

■ Appellant first complains of the admission in evidence, over his objection, of a statement written by one of the police officers in his presence. Detective Hanson of the Seattle police department testified as follows regarding this statement:

"Q. Did you talk, ever talk with Mr. Reed again regarding this case? A. We talked with Mr. Reed several times after that. Twice more, I believe, the following two days in a row. Q. And at any time did Mr. Reed converse with you freely on these days? A. He did. Q. And at any time were any of his statements reduced to writing? A. It was April 17th I took a statement from Mr. Reed in which he admitted the burglary of the Griffin residence and admitted to us that the articles that we had recovered were the articles taken from the Griffin residence. I reduced that to writing. Q. Now, who actually reduced it to writing? A. I did. Q. And you have that writing with you? A. I do. It is in my folder. (Two-page unsigned statement marked as State's Exhibit No. 8 for identification.) Q. Now, handing you what has been marked as State's Exhibit 8 for identification, do you know what that is? A. This is the statement that I took from Mr. William Archie Reed on April 17, 1958, approximately 4:50 P. M. Q. Who wrote the statement? A. I did. Q. Where did you get the information contained in the statement? A. It was given to me by Mr. Reed orally. Q. Now, was any of the information or any of the statements that appear in State's Exhibit 8 for identification obtained from Mr. Reed by any promises made by you? A. None whatsover. Q. Or any threats? A. No. The Court: What was your answer? Witness: None. Q. Now, after you finished writing the statement, what did you do? A. I gave it to him, to Mr. Reed. He read it out loud, and then refused to sign it. He stated to me that it

was true but he did not wish to sign it. Q. Do you have the statement sufficiently in mind without looking at it? A. I believe so. Q. Is there anything recited in that particular statement that Mr. Reed would not tell you? A. Is there—? Q. Is there anything that you put in the statement that you did not get from Mr. Reed? A. No, sir."

The statement was then offered in evidence by the state. Appellant's counsel objected to its admission and the court, after hearing argument in the absence of the jury, overruled the objection and admitted the statement.

Detective Hanson then read the statement to the jury as follows:

"A. This is the statement of William A. Reed, White, Male, 42, 966 Vale Street, Business address, 4100 4th Avenue South. The above is my true name and address. Yesterday, April 16, 1958, I was drinking pretty heavy and I got the idea to break into a house. So I drove my '50 Pontiac (License) APC 778 out to the 2500 block, 33rd Avenue South, where I drove into an alley between 33rd Avenue South and 34th Avenue South in the 2500 block. I saw an open basement garage so I parked my car and went in. From inside the garage I found an unlocked door leading upstairs into the house. I searched the first and second floor of the house. I made two trips to my car taking from the house one bottle of Early Times Whiskey, one bottle of Grouse Scotch, one case of beer, one 12-gauge shotgun, one 16-gauge shotgun, one Waltham gold wrist watch, one electric heater and several articles of women's clothing, dresses, suits and blouses. I took these articles to my home, 966 Vale Street.

"When Detectives R. Hanson and R. Perry arrested me at my home today about 3 P. M. I turned these articles over to them, except for the bottle of scotch, ½ the whiskey and ½ the beer. The missing scotch, whiskey and beer I drank last night and today.

"I have read and corrected the above statement given to Detectives R. L. Hanson and R. O. Perry, and it is true to the best of my recollection, given freely by me, without threat, promise, or duress knowing it will be used in court against me.

"Signed by myself, my partner, R. O. Perry, and not signed by the defendant."

Detective Perry corroborated the testimony of Detective Hanson regarding appellant's admission that this statement was correct.

Appellant took the stand in his own defense and, on cross-examination regarding the statement, testified:

"Q. Now, the statement. You had an opportunity to read the statement? A. Yes. Q. —before I introduced it, and you say none of these things in here are true? A. It definitely is not true. Q. Did you ever tell Detectives Hanson and Perry that they were not true? A. Yes, sir. Q. You did? A. I certainly did. Q. Well, as a matter of fact, didn't you tell Detectives Hanson and Perry that the reason you wouldn't sign it was because you wanted to check with your parole officer? A. No, sir, it is not. Q. As far as you know, Detective Hanson made this up out of whole cloth? One complete lie from beginning to end? A. As far as I'm concerned I never made that statement. Q. Well, then, let me go through it. 'Yesterday, April 16, 1958, I was drinking pretty heavy and I got the idea to break into a house.' Is that true? A. No, sir, I have never been drunk in my life now. Q. You have never been drunk in your life? A. Never have and never been picked up for being drunk. Q. 'So I drove my '50 Pontiac (License) APC 778 out to the 2500 33 Ave. South where I drove into an alley between 33 South and 34 South in the 2500 block. I saw an open basement garage so I parked my car and went in.' Is that true? A. No, sir. Q. 'I searched the first and second floor of the house. I made two trips to my car taking' numerous items. That's not true? A. No, sir, it isn't. Q. 'When Detectives Hanson and Perry arrested me at my home today about 3 P.M. I turned these articles over to them, except for the bottle of scotch, ½ the whiskey, and ½ the beer. The missing scotch, whiskey and beer I drank last night and today.' Is that not true? A. No, sir. No, sir. Q. Are there any reasons that you know of that Detective Hanson or Detective Perry would want to write something down like this and accuse you of having said this? A. No, sir."

In view of the testimony of the two detectives, the trial court did not err in admitting in evidence the statement prepared by Detective Hanson. It was relevant and material to the principal issue in the case because it tended to prove an extra-judicial admission by appellant which was inconsistent with his denial of guilt. The weight to be given to it was for the jury to determine, but the

statement was clearly admissible as pertinent to the issue created by appellant's plea of not guilty.

Appellant in his brief recognizes that our decision in *State v. Harris,* 74 Wash. 60, 132 Pac. 735 (1913), is directly in point, but requests that it be overruled because it encourages perjury among police officers. We there said:

"It appears that on the day following the killing the defendant made a confession to a deputy in the prosecuting attorney's office. This confession was written down in longhand in the presence of defendant and several other persons, and was read over to the defendant, who then stated that the memorandum was accurate. This memorandum was received in evidence over the objection of counsel for the defendant and it is insisted that this was erroneous. There is no merit in this contention, because, when the confession was taken down in writing and its truth acknowledged by parol, then it became the defendant's statement and might be received in evidence the same as if written or signed by him. *State v. Haworth,* 24 Utah 398, 68 Pac. 155; *Klepsch v. Donald,* 8 Wash. 162, 35 Pac. 621."

We are not persuaded to overrule that decision since it is logical and is in line with more recent cases from other jurisdictions on the same subject. See 23 A. L. R. (2d) 919, 926. *Cf State v. Green,* 43 Wn. (2d) 102, 260 P. (2d) 343 (1953). Any voluntary inconsistent oral or written statement made by a defendant to a witness is material if it contains an admission against his own interest.

There is no merit in appellant's first assignment of error.

■ His second assignment is that the trial court erred in giving instruction No. 8, which described the two kinds of evidence—direct and circumstantial. The particular part of this instruction to which appellant excepted reads:

"Strong circumstantial evidence often is the most satisfactory method from which to draw the conclusion of guilt or innocence."

It is contended that this sentence constituted a comment on the evidence by the trial court in violation of Art. IV, § 16, of the state constitution. The state presented both direct and circumstantial evidence tending to prove appel-

lant's guilt of the crime charged in the information. The instruction told the jury, in effect, that it might draw the conclusion of guilt or innocence from circumstantial evidence. The sentence above quoted, which appellant claims constituted reversible error, was immediately followed by the concluding paragraph of the instruction which reads:

"If upon consideration of the whole case, you are satisfied beyond a reasonable doubt of the guilt of the defendant, it does not matter whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction between circumstantial and direct evidence in the amount of proof required for conviction. The law requires that the jury shall be satisfied of the guilt of the defendant beyond a reasonable doubt by either direct or circumstantial evidence, or both."

Concerning the meaning of the constitutional provision above referred to, we said, in *State v. Brown,* 19 Wn. (2d) 195, 142 P. (2d) 257 (1943):

"The constitutional provision that the trial judge shall not comment upon the evidence means no more than that the trial judge is prohibited from action or words having the effect of conveying to the jury the trial judge's personal opinion as to the truth or falsity of any evidence. This court has said:

" 'But we do not think it was intended by this provision to prevent the judges from giving counsel the reasons for their rulings upon questions presented during the progress of the trial, or to prohibit them in all cases from stating, when necessary, the facts upon which they base their conclusion.' *State v. Surry,* 23 Wash. 655, 63 Pac. 557.

"See, also, *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841; *State v. Elder,* 130 Wash. 612, 288 Pac. 1016.

"In the case at bar, the statements complained of were made while ruling upon an objection to the admissibility of evidence. *They did not indicate the judge's opinion as to the truth or falsity of any evidence in the case.*" (Italics ours.)

To the same effect is our recent decision in *State v. Myers,* 53 Wn. (2d) 446, 334 P. (2d) 536 (1959).

Reading instruction No. 8 in its entirety, we are unable to find, in the part to which appellant excepted, anything which could be construed as indicating to the jury the

trial judge's opinion regarding the truth or falsity of any evidentiary matter. The instruction, in our opinion, was entirely proper and no reversible error was committed by the trial court in including the sentence excepted to by appellant.

Appellant next complains that the court erred in denying his motion to suppress the evidence (consisting of the articles of personal property allegedly stolen and found by the police detectives in his home) on the ground that this evidence was obtained by the officers as the result of an illegal search. The officers had no search warrant.

It is conceded by appellant that evidence obtained through a search made as the incident of a lawful arrest is admissible and that a defendant may waive his rights under Art. I, § 7, of the state constitution, which provides:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

The factual issue regarding these last mentioned matters was triable by the court, and its decision thereon constituted the basis for its ruling as to the admissibility of the articles in evidence. The burden of proof was upon the state. *State v. Greco*, 52 Wn. (2d) 265, 324 P. (2d) 1086 (1958).

Appellant's motion to suppress this evidence was timely made, and his objection to its admission was preserved during the trial. The court ruled adversely to him. At the close of the case, appellant's counsel renewed the motion to suppress this evidence and argued at length in support thereof.

The trial court, in denying this motion, discussed the conflict in the testimony between that of the two arresting officers and appellant's testimony regarding the manner in which the officers gained admittance to appellant's home, arrested him, and searched the premises. In evaluating their testimony, the court said:

"THE COURT: Well, on the motion to suppress, on the grounds of illegal search and seizure we have the testimony of the two police officers and the testimony of the de-

fendant. Initially, the testimony of the two police officers has not been impeached in any particular except by the testimony of the defendant which is diametrically opposite on all the important things to which the police officers testified. Either the two police officers were engaged in one of the most diabolical plots by false testimony to convict this man, or else he has perjured himself many times over by his testimony.

"Now, applying all the rules for weighing testimony of witnesses, I don't think you would, on this state of the record, find a judge anywhere that would—Let me say first, either the two police officers were lying outrageously or the defendant was. I don't think you could find a judge anywhere in this state of the record who would hold it was the police officers who were perjuring themselves rather than the defendant. Certainly I attach complete and full credibility to the testimony of the police officers as they have given it here and am forced to the conclusion that the story of the defendant is a perjured story. So, so much for the credibility of the witnesses. Where does that leave the facts and the showing upon which defendant and counsel relies to establish illegal search and seizure?

"Accepting the stories of Detectives Hanson and Perry, it was not an illegal entry. They were asked to come in. It is true that they identified themselves as police officers and wanted to ask some questions, and they did, according to the testimony which this court accepts as a fact, making no search until after they had made the arrest.

"Now, the only possible exception to that we get from their own story is that being there, talking to him, one of them having in mind this electric burner with its rather definite identification from the fact that when it was off it was on and when it was on it was off and the scratching through the name plate, the two police officers were there, they were talking to him, here is one of the stolen items clearly identified. Up to that point they certainly had no probable cause to make an arrest. The moment they saw that they made the arrest which they had a right to do and a duty to do, and after making the arrest, it follows that the search that came thereafter and the seizure of property which came thereafter was a lawful search and seizure because made incidental to the arrest.

"Entertaining those views, the motions of the defendant will be denied."

The trial court having found that the testimony of the two officers was entitled to greater credibility than appellant's testimony on this issue of fact, and having chosen to believe their version of what transpired at his home on the day of appellant's arrest, this court will not attempt to re-evaluate the relative credibility of the testimony of these three witnesses. It is not our function to do so.

What was said in *McDonald v. Wockner*, 44 Wn. (2d) 261, 267 P. (2d) 97 (1954), is equally applicable here, to wit:

"In the present case, the trial judge was appraising the relative credibility of the parties in the light of his experience of more than twenty-eight years on the bench. As we said in *In re Martinson's Estate*, 29 Wn. (2d) 912, 190 P. (2d) 96:

" 'A trial judge is much more than a commissioner named to take and collect evidence in a case. He is a judicial officer provided for by our constitution, and the laws of this state. He has had years of experience as a trial lawyer, and as a judge. . . . The credibility of the witnesses, and the force of their testimony, and the weight that should be attached to it, are all matters concerning which the trial judge is the best judge.'

"What was said in *Lalley v. Lalley*, 43 Wn. (2d) 192, 260 P. (2d) 905, under somewhat similar circumstances is applicable to this case. We there said:

" 'Appellant and respondent were the only witnesses. Two theories were presented. The trial court, as the trier of the facts, rejected one and accepted the other. The record does not disclose that the evidence preponderates against the findings of fact. *Peterson v. Schoonover*, 42 Wn. (2d) 621, 257 P. (2d) 209.'

"See, also, *Corbett v. Ticktin*, 43 Wn. (2d) 248, 260 P. (2d) 895."

■ On the basis of the facts as found by the trial court (which is the trier of the facts as to this motion to suppress certain evidence), we hold that the motion was properly denied and that the articles of personal property referred to above were properly admitted in evidence over appellant's objection.

We now turn to a consideration of appellant's assignments relating to the proceedings had under the supple-

mental information which charged him with being an habitual criminal. As above stated, the trial of this issue was had before a different judge and jury than the trial of the burglary charge. Appellant did not take the stand.

The state called as a witness the official court reporter who had reported the burglary trial, and she read from her notes the portion of appellant's testimony therein in which he admitted to having been previously convicted of two felonies (both second-degree burglary) in the years 1939 and 1952, respectively. The witness identified appellant as the same defendant who was tried for second-degree burglary on November 21 and 22, 1958.

The habitual criminal proceeding is before us for review on an agreed statement of facts. The material portion thereof reads as follows:

"The State then introduced State Exhibits 10 and 11. State's Exhibit 10 was a certified copy of a judgment and sentence and warrant of commitment to the State Reformatory which recited that William Reed was convicted of Burglary in the Second Degree on April 7, 1939 in the Superior Court of the State of Washington for the County of Snohomish and that he had been sentenced to a maximum term of fifteen years in the State Reformatory for said crime. State's Exhibit 11 was a certified copy of a judgment and sentence and warrant of commitment which recited that William A. Reed had been convicted of the crimes of Grand Larceny and Burglary in the Second Degree on August 12, 1952 in the Superior Court of the State of Washington for Whatcom County and had been sentenced to the Penitentiary of the State of Washington for terms of fifteen years for each crime, said terms to run concurrently. Both exhibits were objected to by counsel for the defendant on the grounds that the State of Washington had not proved that the person signing said certifications was the clerk of the court for the respective county; that the State had not proved that the deputy clerks signing said certifications were in fact deputy clerks; that the State had not proved that the persons signing said certifications either as clerk or deputy clerk were in fact custodians of the records certified to; and that said records were not accompanied by a certificate that the officer certifying thereto had custody of said records in accord with Rule 38 of the Rules of Pleading, Practice and Procedure.

The objections to the admission of said exhibits were noted by the court, were overruled, and the exhibits were admitted into evidence."

The state then produced a deputy sheriff who was assigned to the criminal identification division of the King county sheriff's office. He identified a card which contained appellant's fingerprints which he had taken on April 24, 1958. This card was admitted in evidence without objection.

Another deputy sheriff was called as a witness. He was qualified as a fingerprint expert. He identified an enlargement of appellant's left thumbprint made under his supervision from the card mentioned above. This was admitted in evidence without objection.

█ The basis for appellant's fourth assignment of error is the admission of two documents with certificates attached signed by the Director of the State Department of Institutions. These are described in the agreed statement of facts as follows:

"The State then offered into evidence State's Exhibits 14 and 16. State's Exhibits 14 and 16 consisted of certificates with documents attached thereto signed by Garrett Heynes, Director of the Department of Institutions of the State of Washington. Each certificate had attached to it the following documents:

" (1) A copy of the judgment and sentence and warrant of commitment under which the subject of the certificate was admitted to the institution concerned;

" (2) Copies of the fingerprints of the subject of the certificate taken at the time of his admittance to the institution concerned;

" (3) Pictures of the subject of the certificate taken at the time of his admittance to the institution concerned.

"Exhibit 14 recited that the documents attached to the certificate therein were copies of the original records of William Reed, formerly committed to the Washington State Reformatory. State's Exhibit 16 recited that the documents attached to the certificate therein were copies of the original records of William A. Reed, formerly committed to the Washington State Penitentiary.

"Both exhibits were objected to by defense counsel on the following grounds:

"(1) That each document was not certified by itself but was merely attached to a cover certification sheet and that this did not constitute proper certification under Rule 38 of the Rules of Pleading, Practice and Procedure;

"(2) That each document and the whole of said documents were not accompanied by a certificate reciting that the officer certifying thereto in fact had the custody of the documents and that this did not constitute proper certification under Rule 38 of the Rules of Pleading, Practice and Procedure. Said objections were noted by the court and the exhibits admitted into evidence."

(Exhibits 15 and 17, which were also admitted over appellant's objection, are enlargements of the fingerprints contained in Exhibits 14 and 16 and need not be separately discussed.)

In connection with appellant's fourth assignment of error, both parties refer to our recent case of *State v. Kelly*, 52 Wn. (2d) 676, 328 P. (2d) 362 (1958). In that case, we held that the certificate of the warden of the state penitentiary to an exhibit containing the fingerprints of the defendant was sufficient under the then existing statutes to be admissible on the issue of the identity of the defendant as the person previously convicted.

In 1959, the legislature enacted RCW 72.50.010 *et seq.*, which established in the Department of Institutions at Olympia a central office designated as the State Bureau of Criminal Identification. We need not describe all the functions of this bureau. Its chief purpose is to provide one office for keeping all fingerprints, photographs, and descriptions of persons arrested for felonies and certain misdemeanors, as well as persons committed to certain state institutions (including each penal institution). The effect of RCW 72.50.110 is to require the warden to turn over such information and records regarding former inmates of the penitentiary to the bureau. This section also applies to the Superintendent of the State Reformatory.

Exhibits 14 and 16, which appellant contends were erroneously admitted in evidence, have attached to them the certificate of the Director of the Department of Institutions to the effect that he has in his legal custody cer-

tain files and records of persons heretofore committed to each of the state penal institutions. He then certifies that:

" . . . the photograph, fingerprint card, and judgment and sentence attached hereto are copies of the original records of William A. Reed, a person heretofore committed to said penal institution and who served a term of imprisonment therein."

(The penal institution referred to in one instance is the state penitentiary and in the other is the state reformatory.)

Below the signature of the director in each case is the certificate of the secretary of state attesting to the genuineness of the director's signature and stating that he is the legal keeper and officer having legal custody of such records.

In our opinion, these two exhibits were properly admitted by the trial court solely for the purpose of tending to prove appellant's identity as the person previously convicted as alleged in the supplemental information. The rule of the *Kelly* case applies here. The only difference is that the Legislature has subsequently made the Director of the Department of Institutions the legal custodian of the attached records instead of the warden of the state penitentiary or the superintendent of the state reformatory.

The evidence introduced by the state and admitted by the court in support of the allegations of the supplemental information was competent and substantial and the jury was justified, if it believed that evidence, in finding that appellant had previously been twice convicted of felonies in this state.

Appellant's fifth, sixth and seventh assignments of error are not argued separately in his brief and, therefore, we do not find it necessary to discuss them further than to say that, in the light of what has already been said in this opinion, they are without merit.

Finding no reversible error in either trial involved in this appeal, the judgment and sentence is in all respects affirmed.

MALLERY, FINLEY, ROSELLINI, and OTT, JJ., concur.