[No. 1226-1.    Division One—Panel 1.    September 18, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER NEWTON
STEPHENS, *Appellant*.

*Michael W. Herb*, for appellant (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney*, and *Donald J. Hale, Deputy*, for respondent.

CALLOW, J.—The defendant was convicted in April 1971 of two counts of robbery and adjudicated an habitual criminal in August 1971. He appeals from both robbery trial determinations.

The defendant contends the trial court denied him an opportunity to present evidence of intoxication during the robbery trial.

Intoxication as a defense is delineated in RCW 9.01.114, thusly:

> No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent.

*See also State v. Conklin*, 79 Wn.2d 805, 489 P.2d 1130 (1971); *State v. Mello*, 79 Wn.2d 279, 484 P.2d 910 (1971); *State v. Smithers*, 67 Wn.2d 666, 409 P.2d 463 (1965).

An intent to steal is a necessary element of the crime of robbery, *State v. Carter*, 4 Wn. App. 103, 480 P.2d 794

(1971), and intoxication can be considered in a prosecution for robbery to the extent it bears on intent. *State v. Byers,* 136 Wash. 620, 241 P. 9 (1925). *See also Womack v. United States,* 336 F.2d 959 (D.C. Cir. 1964); *Heideman v. United States,* 259 F.2d 943 (D.C. Cir. 1958).

Early in the trial, the state called a Lynnwood police officer who testified on direct examination that he had found beer when he searched the vehicle which had been occupied by the defendant. On cross-examination, the officer responded to defense counsel that he had given defendant a breathalyzer test and that the reading had been ".14%." He also testified that he noticed a "slight odor" of intoxicants and felt defendant was "slightly affected" by alcohol, although his speech and walk appeared unaffected. No attempt was made on cross-examination to introduce evidence of other physical tests to determine the extent of intoxication. On redirect examination, the prosecutor asked the officer whether he had been trained in administering breathalyzer tests and asked what time the test was given. On recross-examination, the defense counsel asked the officer, "Did you give Mr. Stephens any tests other than the breathalyzer?" An objection to this as beyond the scope of the redirect examination was sustained.

■ The scope of the cross-examination of a witness rests largely in the discretion of the trial court and will not be disturbed unless the discretion is abused. *State v. Miles,* 77 Wn.2d 593, 464 P.2d 723 (1970); *State v. Robideau,* 70 Wn.2d 994, 425 P.2d 880 (1967); *State v. Whetstone,* 30 Wn.2d 301, 191 P.2d 818 (1948); *State v. Linden,* 171 Wash. 92, 17 P.2d 635 (1932); *State v. Solomon,* 5 Wn. App. 412, 487 P.2d 643 (1971).

Ordinarily when a subject is unfolded on direct examination, the cross-examination may develop and explore the various phases of that subject. *State v. Robideau, supra; State v. Solomon, supra.*

When the degree of intoxication is at issue, physical tests as well as chemical tests are relevant and within the scope

of examination once the subject is raised. *See State v. Hayes*, 73 Wn.2d 568, 571, 439 P.2d 978 (1968).

In this case, defense counsel first inquired as to the breathalyzer test during cross-examination and could have introduced testimony of physical tests also during that questioning. He chose not to. Redirect examination was limited to the time of the breathalyzer test and the qualifications of the testing officer. The scope of the inquiry was not expanded further. Under these circumstances, the trial court did not abuse its discretion in excluding the testimony on recross-examination. C. McCormick, *Evidence* § 32 (E. Cleary 2d ed. 1972), states at page 64:

> As to the redirect, . . . and all subsequent examinations, . . . the practice is uniform that the party's examination is normally limited to answering any new matter drawn out in the next previous examination of the adversary. . . .
>
> . . .
>
> Re-cross-examination, following the rule of first opportunity mentioned above, is normally confined to questions directed to the explanation or avoidance of new matter brought out on redirect.

(Footnote omitted.)

We have discussed this assignment of error in order to set forth the general context of the testimony. A full reading of the record reflects that intoxication at the time of the offense to the extent that the requisite intent to commit the crime could not have been present was considered by the defense to be a primary defense to the charge. The presentation of this defense was not as vigorous as it might have been; but none the less, it was urged. (There was testimony in support of the defense from both state's witnesses and the defendant.) The lack of a vigorous presentation may have resulted from the aura engendered by the reception given the defense by the trial court.

Article 4, section 16 of the Washington State Constitution provides:

> Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

It is contended that this constitutional provision was violated by the following remarks of the trial court:

Well, of course, counsel well knows what the legal defense is as far as alcoholism is concerned and I don't think it's in this case at all.

■ No motion for a mistrial or objection to the court's remarks was made by defense counsel. Differing views have been expressed by the Supreme Court as to the necessity of such action by defense counsel. *See State v. Richard,* 4 Wn. App. 415, 425, 482 P.2d 343 (1971). The most recent view is that no such motion is necessary because a comment on the evidence invades a constitutional right. *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968). A general instruction to ignore comments upon the evidence was given to the jury but no explanation of the particular remarks was offered.

The purpose of the constitutional prohibition against judges commenting on the evidence is to prevent the jury from being influenced by knowledge conveyed to it by a judge as to his opinion of the evidence submitted. *State v. Lampshire, supra; Risley v. Moberg,* 69 Wn.2d 560, 419 P.2d 151 (1966); *Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970); *State v. Mellis,* 2 Wn. App. 859, 470 P.2d 558 (1970).

A comment violative of Const. art. 4, § 16 is presumed to be prejudicial and prima facie operates to deprive the defendant of a fair trial. *State v. Lampshire, supra; State v. Bogner,* 62 Wn.2d 247, 382 P.2d 254 (1963); *State v. Richard, supra.* The burden rests on the state to show that no prejudice resulted to the defendant unless it affirmatively appears in the record that no prejudice could have resulted from the comment. *State v. Lampshire, supra; State v. Bogner, supra.* In considering whether a comment on the evidence requires reversal, it is immaterial that the remarks were directed solely to counsel when made in the presence of the jury; and reversal is required even where the evidence is undisputed or overwhelming unless it is apparent the remark could not have influenced the jury.

*State v. Bogner, supra.* The state makes no argument on appeal to carry its burden concerning the alleged comment on the evidence. We must examine the record to determine whether it affirmatively appears no prejudice could result from the remark. *State v. Bogner, supra.* We hold that it does not.

Prior to and after the statement, defense counsel had been pursuing a line of questions concerning defendant's drinking. He requested an instruction on intoxication as a defense but did not take formal exception to the court's refusal to give the instruction.

The jury could have inferred that the court felt that defendant's testimony concerning intoxication was untrue hence undermining his general credibility or that defendant was an alcoholic. Further, the comment is such that the jury could have construed it either as indicating that defendant did not have the defense of intoxication to the extent of incapability to form intent or that defendant was afflicted with alcoholism. Under any construction, it implanted the personal opinion and reactions of the trial judge in the minds of the jurors. The state constitution forbids this.

The conviction must be reversed, and the cause retried.

Having held that defendant's robbery conviction must be reversed, it follows that the habitual criminal judgment which is based in part upon the robbery conviction must also be reversed. We consider several assignments of error concerning the habitual criminal proceeding in order to facilitate the retrial.

The first contention is that the state failed to prove a conviction of the defendant of burglary in Maine would amount to a felony in this state. Such proof is required by RCW 9.92.090.

> Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would

575

amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life.

The trial court entered a finding and conclusion as follows:

That the crime of breaking and entering and larceny in the nighttime were at the time they were committed in the State of Maine considered to be a felony under the laws of the State of Washington.

The state introduced a Maine judgment and sentence which showed that defendant had been convicted of "breaking, entering & larceny in the nighttime" and sentenced to the "State Prison."

■ The quoted finding of the trial court indicates that he took judicial notice of the relevant Washington statutes. It is the general rule that the constitution and public statutes of a state will be judicially noticed by all courts of the state. *State v. Larson,* 49 Wn.2d 239, 299 P.2d 568 (1956); *State v. Whetstone, supra;* 29 Am. Jur. 2d *Evidence* §§ 27, 34 (1967); 5 R. Meisenholder, *Evidence* § 595 (1965); 9 J. Wigmore, *Evidence* § 2572 (3d ed. 1940).

The relevant portions of the Maine judgment read as follows:

WALTER N. STEPHENS . . . on September 14, 1958, at said Lewiston, in the nighttime of said day, a certain building in which valuable things are kept, to wit, the filling station . . . feloniously did break and enter, and a Smith-Corona Cash Register of the value of twenty dollars, . . . the property of . . . [another], in said building then and there being, then and there, in and form [*sic*] said building, feloniously did steal, take and carry away, against the peace of said State, and contrary to . . . the statute . . .

■ If the indictment or information on which a person is convicted or, as reflected in the judgment itself, alleges sufficient facts to constitute a felony within this state, the

conviction comes within the meaning of RCW 9.92.090. *State v. Furth*, 5 Wn.2d 1, 104 P.2d 925 (1940).

RCW 9.19.020 defines burglary in the second degree:

Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years.

■ The facts mirrored by the Maine judgment if proven to have occurred in Washington would be sufficient to convict under RCW 9.19.020. While the Maine judgment does not recite a finding of intent to commit a crime, it does refer to "feloniously" breaking and entering. The word "feloniously" means "with criminal intent." *State v. Smith,* 31 Wash. 245, 71 P. 767 (1903). *See also Petition of Brown,* 150 Mont. 483, 436 P.2d 693 (1968). This is not an instance where the prosecution relied upon a conviction under the breaking and entering statute of a foreign state which did not require intent and would not constitute a felony in the forum state. *See, e.g., Ex parte Seeley*, 29 Cal. 2d 294, 176 P.2d 24 (1946). The conviction of burglary in Maine was proven to be a conviction which would amount to a conviction of a felony in this state.

A record from the Washington State Penitentiary was admitted. The record was certified by the deputy assistant secretary of central services of the Department of Social and Health Services for the State of Washington. This official attested that "certain of the original files and records" of the prisoners were in his custody and that the records attached were copies of the originals. While the attestation does not specifically state that the attached records were among those under his legal custody, we think that is fairly implied from his statement.

A certification by the Secretary of State under the seal of

Washington State is also attached. The secretary certified the deputy assistant secretary was "the legal keeper" and the officer having "legal custody" of certain records and that his signature was genuine.

It is contended the admission of the records was not in accordance with RCW 5.44.040:

> Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state, when duly certified by the respective officers having by law the custody thereof, under their respective seals where such officers have official seals, shall be admitted in evidence in the courts of this state.

The controversy concerns whether the deputy assistant secretary is an officer "having by law the custody" of the records within the statute. In *State v. Kelly,* 52 Wn.2d 676, 680, 328 P.2d 362 (1958), the court stated:

> Therefore, the warden of the *Washington state penitentiary,* who is by law the proper custodian of the *prison records,* may certify such record under RCW 5.44.040 and when so certified, it shall be received in evidence in an habitual criminal proceeding.

*See also* RCW 72.08.040.

In *State v. Reed,* 56 Wn.2d 668, 354 P.2d 935 (1960), the court faced a problem nearly identical to the issue before us. In that case, the court noted at page 681:

> In connection with appellant's fourth assignment of error, both parties refer to our recent case of *State v. Kelly,* 52 Wn. (2d) 676, 328 P. (2d) 362 (1958). In that case, we held that the certificate of the warden of the state penitentiary to an exhibit containing the fingerprints of the defendant was sufficient under the then existing statutes to be admissible on the issue of the identity of the defendant as the person previously convicted.
>
> In 1959, the legislature enacted RCW 72.50.010 *et seq.,* which established in the Department of Institutions at Olympia a central office designated as the State Bureau of Criminal Identification. We need not describe all the functions of this bureau. Its chief purpose is to provide

one office for keeping all fingerprints, photographs, and descriptions of persons arrested for felonies and certain misdemeanors, as well as persons committed to certain state institutions (including each penal institution). The effect of RCW 72.50.110 is to require the warden to turn over such information and records regarding former inmates of the penitentiary to the bureau. This section also applies to the Superintendent of the State Reformatory.

Exhibits 14 and 16, which appellant contends were erroneously admitted in evidence, have attached to them the certificate of the Director of the Department of Institutions to the effect that he has in his legal custody certain files and records of persons heretofore committed to each of the state penal institutions. He then certifies that:

". . . the photograph, fingerprint card, and judgment and sentence attached hereto are copies of the original records of William A. Reed, a person heretofore committed to said penal institution and who served a term of imprisonment therein."

. . .

Below the signature of the director in each case is the certificate of the secretary of state attesting to the genuineness of the director's signature and stating that he is the legal keeper and officer having legal custody of such records.

In our opinion, these two exhibits were properly admitted by the trial court solely for the purpose of tending to prove appellant's identity as the person previously convicted as alleged in the supplemental information. The rule of the *Kelly* case applies here. The only difference is that the Legislature has subsequently made the Director of the Department of Institutions the legal custodian of the attached records instead of the warden of the state penitentiary or the superintendent of the state reformatory.

Subsequent to *State v. Reed, supra,* the powers, duties, and functions of all divisions of the Department of Institutions were transferred to the Department of Social and Health Services. RCW 43.20A.220. Thus, the Department of Social and Health Services now has legal custody of the documents. The procedures approved in *State v. Reed,*

*supra,* were followed in this case except that the certification and attestation were properly provided by the new custodian of the records.

It is contended that judicial records from Maine and Washington were improperly admitted because the attestation in each instance allegedly failed to specify what records were attached thereto.

The judicial records and proceedings of a sister state must be proved in the manner specified in 28 U.S.C.A. § 1738 (1966) or in the manner prescribed by RCW 5.44.010. *State v. O'Dell,* 46 Wn.2d 206, 279 P.2d 1087 (1955); *State v. Matte,* 1 Wn. App. 510, 462 P.2d 985 (1969). Both statutes require authentication by the attestation of the clerk of the court.

The clerk of the appropriate superior court in Maine attested that the documents were a true copy of "all matters in case of, State of Maine vs Stephens, Walter N. Docket No. 5016." Each of the attached documents is marked with docket No. 5016 constituting a prima facie showing that the attestation refers to their authenticity. *See State v. Matte, supra* at 515.

The attestation of the Washington judgment and sentence is placed directly upon the document. In such a case, it would be superfluous to describe the document by name. The document consists of two pages: the judgment and sentence, and a finding of fact. The interconnection of the two pages is demonstrated by the appearance of the same docket number on each page, numbers which indicate the pages were consecutively placed in record volumes, and an indication on the page entitled "Finding of Fact" that it is to be stapled to the judgment.

■ Defense counsel objected to the testimony of a Snohomish County deputy sheriff concerning comparisons of fingerprint cards. The qualification of an expert witness lies with the discretion of the trial court. *State v. Nelson,* 72 Wn.2d 269, 432 P.2d 857 (1967); *State v. Cole,* 67 Wn.2d 522, 408 P.2d 387 (1965); 5 R. Meisenholder, *Evidence* § 353 (1965). No abuse of discretion is shown.

The judgment and sentence from the King County Superior Court is claimed to have been improperly certified because the seal of the clerk rather than the seal of the court was affixed. *See* RCW 5.44.010. An examination of the exhibit indicates this is not so. The attestation of the superior court clerk reads in part: "I have hereunto set my hand and affixed the Seal of said Superior Court . . ." The seal on the exhibit is the seal of the Superior Court for King County. The clerk of the superior court is responsible for keeping the seal of the court and affixing it where it is required by law. RCW 2.32.050.

In *State v. Price*, 59 Wn.2d 788, 792, 370 P.2d 979 (1962), the court stated:

> Finally, appellant contends that he has been twice placed in jeopardy; first, when tried upon the charges of burglary and larceny and, secondly, when he was charged with being an habitual criminal. The habitual criminal statute, RCW 9.92.090, does not establish a substantive offense. *State v. Lei, ante* p. 1, 365 P. (2d) 609 (1961). The proceeding determines the statutory punishment for the offense with which the accused is charged and of which he is convicted. Appellant was only once placed in jeopardy for the crimes of burglary and larceny.

*See also State v. Jackovick*, 56 Wn.2d 915, 355 P.2d 976 (1960). We are asked to overrule *Price* on the basis of *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970). In that case, the Supreme Court held that the federal rule of collateral estoppel is embodied in the Fifth Amendment's guaranty against double jeopardy. The court defined what it meant by collateral estoppel at page 443:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

The rationale of *State v. Price, supra*, is consistent with the Supreme Court's view of collateral estoppel. No

issue of ultimate fact was relitigated between the same parties in the habitual criminal trial. In order to establish the *status* of an accused as an habitual criminal, the state must prove only that the individual named in the prior criminal judgments is the same person as the person charged with being an habitual criminal. *State v. Kelly, supra.* The ultimate facts litigated in the prior trials are not relevant to the habitual criminal proceeding.

Prison records from the state of Maine were identified by the testimony of the assistant classification and rehabilitation officer in the Maine State Prison, whose duties included keeping inmate records. He identified a fingerprint card and photograph as originals and testified that the rest of the exhibit consisted of accurate copies of original documents which he had in his possession. He further testified that those originals were from defendant's case history as contained in the records of the Maine State Prison and that the prison was required by law to keep such records.

It is contended that nonjudicial records of foreign states must be proved in accordance with 28 U.S.C.A. § 1739 (1966), which provides:

> All nonjudicial records or books kept in any public office of any State, Territory, or Possession of the United States, or copies thereof, shall be proved or admitted in any court or office in any other State, Territory, or Possession by the attestation of the custodian of such records or books, and the seal of his office annexed, if there be a seal, together with a certificate of a judge of a court of record of the county, parish, or district in which such office may be kept, or of the Governor, or secretary of state, the chancellor or keeper of the great seal, of the State, Territory, or Possession that the said attestation is in due form and by the proper officers.
>
> If the certificate is given by a judge, it shall be further authenticated by the clerk or prothonotary of the court, who shall certify, under his hand and the seal of his office, that such judge is duly commissioned and qualified; or, if given by such Governor, secretary, chancellor, or keeper of the great seal, it shall be under the great seal of the State, Territory, or Possession in which it is made.

Such records or books, or copies thereof, so authenticated, shall have the same full faith and credit in every court and office within the United States and its Territories and Possessions as they have by law or usage in the courts or offices of the State, Territory, or Possession from which they are taken.

Defendant argues that the procedure adopted by the court provided no corroboration for the officer's testimony that he was custodian of the records. The federal statute requires an additional certification that the attestation was in due form and by the proper officer.

The trial court admitted the records under the theory that the statute was intended to obviate the necessity of producing an out-of-state official to identify the records but that it did not render inadmissible records which were sufficiently identified at trial by testimony of their actual custodian. We concur that the statute does not require the personal presence of the custodian of the records at the trial and is intended to avoid that expense of time and money. *Rademacher v. United States,* 285 F.2d 100 (5th Cir. 1960).

The federal statute does not exclude other modes of authentication which are recognized by state law. *State v. Young,* 366 S.W.2d 386 (Mo. 1963); *Kearney v. Thomas,* 225 N.C. 156, 33 S.E.2d 871 (1945). In Washington, the route for the admissibility of *nonjudicial* public records from sister states is provided by CR 44. CR 44 requires that an official record kept within the United States, *when admissible* for any purpose, be evidenced by a copy (1) attested by the officer having legal custody of the record and (2) accompanied by a certificate that such officer has the custody. The certificate is to be made by the appropriate judge or higher public officer.

Authority supports the view that compliance with 28 U.S.C.A. § 1739 (1966) is necessary. In *State v. Johnson,* 194 Wash. 438, 78 P.2d 561 (1938), the court cited the federal statute and quoted *James v. James,* 35 Wash. 650, 655, 77 P. 1080 (1904), with approval at page 444:

Records from public offices of sister states, other than courts, must be certified in accordance with the United States statutes, to be admissible in evidence in the courts of this state."

██ The two-fold requirements present in both the federal statute and CR 44, of attestation of the record by the custodian and certification of the position of the custodian, have not been met. We need not decide whether the course indicated by *State v. Johnson, supra,* using the federal statute or by CR 44 is controlling but, in any event, compliance with the requirements is mandatory, whichever course is followed.

The testimony of the Maine official was insufficient to establish his own status as the proper officer and that the attestation was in proper form. Those records are necessary to connect defendant with the Maine convictions and, therefore, the judgment in the habitual criminal proceeding would be required to be overturned even if the robbery conviction of the defendant had been affirmed.

██ Defendant also alleges error in the trial court's amendment of the information charging him with an habitual criminal status. Having not objected to the amendment at trial, defendant is precluded from raising the issue on appeal.

Both judgments are reversed and remanded for retrials consistent with this opinion.

HOROWITZ, C.J., and FARRIS, A.C.J., concur.

Petition for rehearing denied February 20, 1973.

Review granted by Supreme Court May 1, 1973.