[No. 60712-5.   En Banc.   February 16, 1995.]

THE STATE OF WASHINGTON, *Petitioner,* v. JEFFREY EUGENE LANE, ET AL, *Respondents.*

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn-Brintnall* and *Barbara L. Corey-Boulet, Senior Appellate Deputies,* for petitioner.

*Jeffrey D. Gross,* for respondent Lane.

*David M. Goodson* and *Clifford G. Morey,* for respondent Woods.

*L. Steve Edmondson,* for respondent Anderson.

JOHNSON, J. — This case involves the prosecution of three defendants, Jeffrey Lane, Jonathon Woods, and Wayne Ander-

son, for multiple felonies, including the brutal murder of 89-year-old Eva Wolfe. The State and Jonathon Woods appeal the Court of Appeals decision in this case, which affirmed Woods' convictions on all six counts charged, but reversed several of the other two Defendants' convictions, including Lane's conviction for aggravated first degree murder and Anderson's conviction for first degree felony murder.

## FACTS

In November 1987, while attempting to evade police officers, Defendants Jeffrey Lane and Jonathon Woods broke into Eva Wolfe's home and remained there for approximately 2 hours, holding Wolfe against her will. Lane and Woods were later charged with burglary in the second degree. Wolfe was subpoenaed to testify at their trial; however, Lane and Woods pleaded guilty to criminal trespass in the first degree and each served a jail sentence. They were released in March 1988.

Shortly after their release, Lane, Woods, and a third Defendant, Wayne Anderson, engaged in a crime spree that culminated in the murder of Wolfe. It began April 20, 1988, when Lane, Woods, and Anderson robbed Brian Cook at gunpoint, taking items including a .380 handgun, marijuana from Cook's grow operation, cash, Cook's truck, checkbook, and identification.

April 30, 1988, Lane and Woods again visited the home of Eva Wolfe, this time accompanied by Anderson. They cut Wolfe's telephone lines, kicked in her garage and back doors, and entered her home wearing gloves and ski masks. They found Wolfe in her bedroom, got her out of bed, and forced her to sit on the floor for several minutes while they went through her belongings. The Defendants took Wolfe's car keys and money from her purse. They then took Wolfe out to her garage and forced her into the trunk of her Chevrolet Malibu, stuffing couch cushions and a blanket around her. She was dressed in only a nightgown, housecoat, and slippers.

The Defendants drove Wolfe's car onto the Fort Lewis Military Reservation and stopped the car on a dirt road next to a field in a remote part of the base. The Defendants took

Wolfe out of the trunk of her car and forced her to write a $500 check made out to Brian Cook. Wolfe was then led away from her car and back into the woods. Wolfe was forced to the ground and shot in the leg five or six times, severing her leg below the knee. Wolfe sat up, and was shot again, this time in the head at point-blank range. This shot caused her death.

Lane, Woods, and Anderson left Wolfe's body at Fort Lewis and drove away in her car. They picked up Lane's close friend, Robert Hipkins, and the three Defendants and Hipkins went to a local tavern. Lane and Anderson went inside to talk to someone, and, while they were gone, Woods told Hipkins about Wolfe's murder. When Lane and Anderson returned to the car, Hipkins repeated what Woods had told him. Neither Lane nor Anderson denied the three Defendants had killed Wolfe.

The four men then drove to the Hilltop area of Tacoma looking for drugs. At a 7-Eleven, they were approached by Juan Green, who offered to sell them rock cocaine. Green produced the drugs and got into the car with the Defendants and Hipkins. When Green sought payment for the drugs, Woods pointed a gun at Green's chest. Green attempted to grab the gun and was shot in the hand. Lane, Woods, Anderson, and Hipkins returned to Anderson's house in Wolfe's car. There they smoked the rock cocaine taken from Juan Green.

The next day Wolfe was discovered missing. Suspecting Lane and Woods were involved, the police placed them under surveillance at Anderson's house. Officer Kirby testified that the Defendants taunted him as he was observing their actions at Anderson's house. The Defendants were apparently aware of the officer's presence and waved to him. They also made motions as though they were preparing to leave in Anderson's Mercury Capri, but then got out of the car and ran back into the house. Later the same day, Lane, Woods, and Anderson were arrested and charged with several crimes unrelated to Wolfe's disappearance.

One month later, Woods confessed that he, Lane, and Anderson broke into Wolfe's home, forced her into the trunk

of her car, and drove her out to Fort Lewis. He then led police to Wolfe's body in a remote area of the base.

Lane, Woods, and Anderson were charged with six counts arising out of the incidents involving Wolfe, Brian Cook, and Juan Green:

Count 1: first degree burglary of Wolfe's home;

Count 2: first degree robbery of Wolfe while armed with a deadly weapon;

Count 3: first degree kidnapping of Wolfe;

Count 4: first degree murder of Wolfe committed with premeditation and various aggravating circumstances or, alternatively, felony first degree murder committed in the course of burglary, robbery or kidnapping;

Count 5: first degree robbery of Brian Cook while armed with a deadly weapon; and

Count 6: first degree robbery of Juan Green while armed with a deadly weapon.

Lane pleaded guilty to all counts except count 4, aggravated first degree murder. At trial, Woods' attorney told the jury that Woods "personally caused the death of Eva Wolfe". Report of Proceedings (RP) vol. 15, at 54. Lane and Anderson also testified that Woods shot Wolfe. Woods elected not to testify.

The jury found Lane and Woods guilty of aggravated first degree murder, and Anderson guilty of first degree felony murder. They found Woods and Anderson guilty of the five other counts. The court sentenced Lane and Woods to life imprisonment without possibility of parole and Anderson to 493 months in prison.

All three Defendants appealed, raising numerous issues. The main issues were whether the trial judge commented on the evidence and whether he erred in admitting certain evidence under Rules of Evidence 404(b), the same issues accepted for review by this court. The Court of Appeals held the trial court erred in both regards, but that the errors were harmless as to the kidnapping and robbery counts to which Lane pleaded guilty, as to one of the robbery counts

for which Anderson was convicted, and as to the aggravated first degree murder, kidnapping, burglary, and robbery counts on which Woods was convicted. The court reversed Lane's aggravated first degree murder conviction and Anderson's convictions for felony murder, burglary, kidnapping, and two counts of robbery. *State v. Lane*, cause 13439-0-II, Court of Appeals unpublished opinion noted at 69 Wn. App. 1001 (1993). We accepted the State's and Woods' petitions for review and now affirm in part and reverse in part.

ANALYSIS

I

■ We first address whether, under ER 404(b), the trial court properly admitted evidence of noncharged criminal activity engaged in by the Defendants prior to and after the commission of the crimes charged in this case. We review the admission of evidence under an abuse of discretion standard. *State v. Tharp*, 27 Wn. App. 198, 205-06, 616 P.2d 693 (1980), *aff'd*, 96 Wn.2d 591, 637 P.2d 961 (1981).

■ ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In addition to the exceptions identified in ER 404(b), our courts have previously recognized a "res gestae" or "same transaction" exception, in which "evidence of other crimes is admissible '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place.'" *Tharp*, 27 Wn. App. at 204 (quoting *McCormick's Evidence* § 190, at 448 (Edward W. Cleary gen. ed., 2d ed. 1972)).

■ ER 404(b) admissibility requires a 2-part analysis: (1) the evidence sought to be admitted must be relevant to a material issue; and (2) the probative value of the evidence must outweigh its potential for prejudice. *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982) (citing *State v. Goe-*

*bel*, 40 Wn.2d 18, 240 P.2d 251 (1952)). A trial court must identify, on the record, the purposes for which it admits evidence under an ER 404(b) analysis. *Saltarelli*, 98 Wn.2d at 362.

In *Tharp*, the defendant was charged with second degree murder. Over the defendant's objection, the trial court admitted evidence of a series of uncharged crimes committed prior to and after the alleged murder. The Court of Appeals held the admission of the collateral crimes was proper under a "res gestae" or "same transaction" exception. The court explained:

> The jury was entitled to know the whole story. The defendant may not insulate himself by committing a string of connected offenses and thereafter force the prosecution to present a truncated or fragmentary version of the transaction by arguing that evidence of other crimes is inadmissible because it only tends to show the defendant's bad character. "(A) party cannot, by multiplying his crimes, diminish the volume of competent testimony against him." *State v. King*, 111 Kan. 140, 145, 206 P. 883, 885 (1922).

*Tharp*, 27 Wn. App. at 205.

On appeal, this court affirmed, similarly finding,

> the uncharged crimes were an unbroken sequence of incidents tied to Tharp, all of which were necessary to be placed before the jury in order that it have the entire story of what transpired on that particular evening. Each crime was a link in the chain leading up to the murder and the flight therefrom. Each offense was a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury.

*Tharp*, 96 Wn.2d at 594.

The court in *State v. Thompson*, 47 Wn. App. 1, 733 P.2d 584, *review denied*, 108 Wn.2d 1014 (1987) again recognized a res gestae exception. In *Thompson*, the defendant was charged with murder in the second degree and assault in the first degree while armed with a deadly weapon. *Thompson*, 47 Wn. App. at 2. At trial, the court admitted the testimony of three witnesses, who described the defendant's behavior the same evening as the murder and assault. One witness described the defendant as brandishing a gun and yelling, "I'm going to kill the bastard". *Thompson*, 47 Wn. App. at 4.

The other two witnesses testified the defendant pointed a gun at them after they shouted at the defendant from their car. *Thompson*, 47 Wn. App. at 4.

On appeal, the defendant argued this testimony was not relevant to any of the identified ER 404(b) purposes and the prejudicial effect of the testimony outweighed the probative value. *Thompson*, 47 Wn. App. at 10. The Court of Appeals disagreed, finding the evidence was admissible to refute the defendant's self-defense claim by showing a continuing course of provocative conduct. It further found the testimony was relevant under the res gestae exception because the conduct took place in the immediate timeframe of the assault and murder. *Thompson*, 47 Wn. App. at 12.

In this case, the Defendants challenged the relevancy of testimony from several witnesses regarding incidences that occurred in the 2- or 3-day period when Wolfe was abducted. Donald McCray testified that on the evening of April 29, 1988, Lane and another man robbed him at gunpoint while he was working at Jim's Union Station on Sixth Avenue in Tacoma. Faye Steffen and Daniel Ferguson testified that on April 30, their car was struck by a red Mercury Capri being driven by two men wearing ski masks. Ferguson chased the car and put his fist through the car's window.

Melody Bissenbacker testified that on April 30, Lane, Woods, Anderson, and Carol Badua[1] came into Timesavers Grocery in Tacoma. Anderson bought a newspaper and asked where he could find an article about a robbery on Sixth Avenue the previous night. He looked through the local section but did not find the article and returned the newspaper. Lane showed Bissenbacker a gun concealed under his jacket. The four then left, but returned later that day. When Bissenbacker's shift ended, she went with them to a bowling alley. Badua told Bissenbacker they had robbed a drug dealer and showed her some marijuana.

Bowling alley security officer Kevin Morton testified that Lane and Woods set off a smoke bomb in the bathroom at

---

[1]Ms. Badua is also referred to in the record as "Carol Badou".

the bowling alley at about 9 p.m. on April 30. Lane told Morton his name was Brian Cook. Morton photographed the two men and barred them from the bowling alley. Carol Baungjaktha testified that she saw two men leaving the bowling alley yelling obscenities at the security guard. They threw a smoke bomb at the building and left in a small red car. Douglas Dumbleton also testified that at about 11:30 p.m. that evening a passenger in a Chevrolet Malibu fired a gun at his Ford Mustang.

Prior to trial, defense moved to exclude these incidents, as well as the testimony regarding the taunting of the police officer while the Defendants were under surveillance. The trial judge denied the Defendants' initial and subsequent motions to exclude the evidence on the ground that the incidents took place in the 48-hour timespan before or after Wolfe's murder and were, therefore, "basically relevant". RP vol. 4, at 129-30. The judge also determined the evidence related to the Defendants' "participation or degree of participation" in the charged crimes. RP vol. 16, at 7-8.

On appeal, Division Two held that res gestae alone is not a valid basis for admitting evidence under ER 404(b), explaining, "the court must still find a relevant purpose for admitting the evidence". *State v. Lane*, cause 13439-0-II, slip op. at 16 (1993). The court further held the contested evidence was not admissible to prove identity because "identity was not in issue for purposes of ER 404(b) . . .". *Lane*, slip op. at 16 (citing *State v. Mutchler*, 53 Wn. App. 898, 771 P.2d 1168, *review denied*, 113 Wn.2d 1002 (1989); *State v. Bowen*, 48 Wn. App. 187, 738 P.2d 316 (1987)).

■ Once the trial court has found res gestae evidence relevant for a purpose other than showing propensity and not unduly prejudicial, that evidence is admissible under the res gestae exception to ER 404(b), so long as the State has shown by a preponderance of the evidence that the uncharged crimes occurred and were committed by the accused. *Tharp*, 96 Wn.2d at 593-94. There is no additional requirement, as imposed by the Court of Appeals here, that res gestae evidence be relevant for *an additional purpose*, such as plan, motive, or identity.

By dismissing the trial judge's determination of relevancy and substituting its own analysis, the Court of Appeals departed from the abuse of discretion standard of review applicable in appeals involving the admissibility of evidence. *See State v. Goebel*, 36 Wn.2d 367, 379, 218 P.2d 300 (1950) (*Goebel* I); *Tharp*, 27 Wn. App. at 206. We find a sufficient basis on which to affirm the trial judge's determination under an abuse of discretion standard. The trial court was aware of this court's decision in *State v. Tharp, supra*. It found the evidence relevant because of its proximity in time and place to the crimes charged and because it showed the degree of participation of the various Defendants. This case involved three individuals, each charged, among other crimes, with the murder of one woman. The evidence suggested there was only one trigger person. Thus, to obtain three murder convictions, the State was required to demonstrate these three men acted in unison. The contested evidence corroborated the State's theory as to how these men interacted — that when these Defendants committed crimes, each one had a role to play and each was in some manner responsible and accountable for the crimes charged in this case. The trial court did not abuse its discretion in finding the contested evidence relevant and did not err in admitting it under the "res gestae" exception.

## II

We next address whether under article 4, section 16 of the Washington State Constitution, the trial court's remarks to the jury regarding one of the State's witnesses constituted an impermissible comment on the evidence.

## A

At trial, the State called William Blake to testify about conversations Blake had with Lane and Anderson. Blake was in jail with Lane and Anderson before Wolfe's body had been found and both Lane and Anderson talked to Blake about her murder. According to Blake's testimony, Lane described the incident to Blake and indicated that Wolfe had been killed for revenge. RP vol. 22, at 16. Blake further

testified that Anderson also described the robbery and abduction and that Anderson could hear Wolfe pounding on the trunk, crying "[l]et me out". RP vol. 22, at 20. Blake testified that Anderson told Blake he heard six shots and that one of Wolfe's legs had been severed. RP vol. 22, at 21. Lane and Anderson both denied making the statements alleged by Blake. Anderson asserted Blake was already in possession of the information about the murder when Blake first talked to him.

On cross examination, the defense established Blake had previously worked for the police as a paid informant, to obtain money for "dope". RP vol. 22, at 33. Blake testified he was not being paid or otherwise benefited in exchange for his testimony in this case. At the time he talked to Lane and Anderson, Blake was serving a 6-month forgery sentence, but his sentence was reduced to 3 months. The defense asserted Blake's sentence reduction was granted in exchange for his testimony. RP vol. 20, at 40-41. Blake denied this assertion, stating his sentence was reduced to protect his safety because word had spread in the jail that Blake was cooperating with the police. The State also offered the testimony of a detective who claimed no deals had been made with Blake. RP vol. 22, at 53.

Counsel for Anderson called Kim DeLavergne, a "criminal associate" of Blake's, who testified Blake stated to him he had told the authorities what they wanted to hear concerning Wolfe's murder. DeLavergne also testified that Blake said his early release from jail was the result of his cooperation with the police and Blake expected to be paid $800 for his testimony at the Defendants' trial. RP vol. 19 at 43-49.

In the rebuttal phase of the case, the State proposed to recall Blake. Out of the presence of the jury, the parties and the court engaged in an extensive colloquy about the propriety of that proposal, as well as the propriety of an instruction the court intended to read to the jury regarding why Blake had been released from jail early. The prosecution argued the judge's proposed remarks were not proper instructions on the law and unnecessarily called attention to

certain evidence.[2] The Defendants objected on grounds the instruction went beyond the evidence and constituted a comment on the evidence. Over the objection of the parties, the judge made the following remarks in the presence of the jury:

> The sentence of William Blake was reduced to three months confinement and release date of June 8, 1988 given. The reasons advanced by the prosecutor and accepted by the judge related to Mr. Blake's safety and an inadvertent disclosure near [sic] of Mr. Blake's cooperation with authorities given to an unidentified person. Whether that last statement proves or does not prove anything is a matter for the jurors.
>
> Now instruction on the law. The testimony of Mr. Blake regarding prior statements of Mr. Anderson may be considered by you in determining Mr. Anderson's credibility and for no other purpose.

RP vol. 24, at 217.

On appeal, the Defendants argued the judge's remarks constituted an impermissible comment on the evidence, in violation of article 4, section 16 of the state constitution. The Court of Appeals agreed, explaining: "[t]he practical effect was to put before the jury the trial court's opinion on an important fact relating to Blake's credibility, and Blake's credibility was a key issue in the case". *Lane*, slip op. at 32. The court then applied a harmless error analysis with respect to each Defendant, finding the constitutional violation harmless as to Defendants Woods and Anderson, but prejudicial as

---

[2]Deputy Prosecutor Horne stated to the court:

"[Prosecutor] Ladenburg had concerns regarding [the court's proposed instruction]. He conveyed to me that because that is not stipulated to, it is not really evidence and not really an instruction on the law. It purports to be a finding or evidentiary type of statement to the jury that is in fact proper form for a stipulation but there is no stipulation." RP vol. 24, at 183.

The next day Prosecutor Ladenburg stated to the court: "[W]e really feel at this time [the] court should not give the instruction and I think there is [a] number of reasons. One, I am afraid to some extent [to] put in evidence facts we are not able to put in evidence. And we decided not to call Mr. Horne but drop the matter and we are gettomg [sic] the jury in the small thin area unimportant, even Mr. Blake's case, unimportant and focuses unnecessarily leads us off on a tangent.

"The State prefers not to give the instruction and drop the matter and finish the trial and go on with Mr. Blake's testimony and argue the jury instructions." RP vol. 24, at 215.

to Lane. *Lane,* slip op. at 60-68. We agree with the Court of Appeals that the trial court impermissibly commented on the evidence. However, we hold the error was harmless as to each Defendant.

## B

■■ Article 4, section 16 of the Washington Constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law". A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement. *State v. Hansen,* 46 Wn. App. 292, 300, 730 P.2d 706, 737 P.2d 670 (1986). The touchstone of error in a trial court's comment on the evidence is whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury. *State v. Trickel,* 16 Wn. App. 18, 25, 553 P.2d 139 (1976), *review denied,* 88 Wn.2d 1004 (1977).

The purpose of prohibiting judicial comments on the evidence is to prevent the trial judge's opinion from influencing the jury. *Hansen,* 46 Wn. App. at 300. Early in our constitutional history, we explained:

> The constitution has made the jury the sole judge of the weight of the testimony and of the credibility of the witnesses, and it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to his discretion, and that such opinion, if known to the juror, has a great influence upon the final determination of the issues.

*State v. Crotts,* 22 Wash. 245, 250-51, 60 P. 403 (1900).

■ Our prior cases demonstrate adherence to a rigorous standard when reviewing alleged violations of Const. art. 4, § 16. Once its has been demonstrated that a trial judge's conduct or remarks constitute a comment on the evidence, a reviewing court will presume the comments were prejudicial. *State v. Bogner,* 62 Wn.2d 247, 249, 253-54, 382 P.2d 254 (1963). In such a case, "[t]he burden rests on the state to show that no prejudice resulted to the defendant unless it affirmatively appears in the record that no prejudice could

have resulted from the comment". *State v. Stephens*, 7 Wn. App. 569, 573, 500 P.2d 1262 (1972), *aff'd in part, rev'd in part*, 83 Wn.2d 485, 519 P.2d 249 (1974); *see also Bogner*, 62 Wn.2d at 253-54.

In this case, the trial court read a statement to the jury regarding the reason for Blake's early release. Blake testified for the State, providing direct statements by Lane and Anderson that supported the element of premeditation. The reason for Blake's early release was a disputed issue of fact. The State presented Detective Yerbury's testimony that Blake's cooperation was revealed to an anonymous telephone caller and Blake was thus placed in jeopardy and needed early release. Conversely, Kim DeLavergne testified that Blake told him he concocted the story in return for money and favorable treatment by the State.

By making the statement regarding Blake's treatment, the trial judge charged the jury with a fact and expressly conveyed his opinion regarding the evidence. Consequently, we agree with the Court of Appeals that the trial court's instruction regarding Blake's early release constituted an impermissible comment on the evidence.

### C

Finding the trial court's remarks constitutional error, we next address whether the error requires reversal for a new trial. The Court of Appeals applied the "overwhelming untainted evidence" test for constitutional error articulated by this court in *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). In *Guloy*, we held a constitutional error is harmless "if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt". *Guloy*, 104 Wn.2d at 426. In prior cases involving a judicial comment on the evidence in violation of our constitutional mandate, we focused on whether the comment could have influenced the jury. In *Bogner*, we explained,

> [e]ven if the evidence commented upon is undisputed, or "overwhelming," a comment by the trial court, in violation of the constitutional injunction, is reversible error unless it is apparent that the remark could not have influenced the jury.

*Bogner*, 62 Wn.2d at 252.

On appeal to this court, Woods contends the Court of Appeals failed to recognize the prejudicial effect of the judge's comments regarding Blake. Woods further argues the overwhelming untainted evidence test cannot satisfy the State's burden of proving the judge's comments could not have influenced the jury. We disagree.

Independent of Blake's testimony, there was overwhelming untainted evidence supporting Woods' convictions on all counts. The manner in which the murder was committed supports a finding of premeditation. The Defendants cut Wolfe's telephone line, broke into her home wearing ski masks and gloves, and went directly to Wolfe's bedroom to abduct her. They forced her into the trunk of her car, refusing to bring her glasses, medicine, or even her shoes. They drove her to a remote location, walked her into the woods, and shot her several times. The fatal shot was fired at Wolfe's head at close range as she was attempting to sit up. James Blackmer, who was in jail with Woods in June 1988, testified that Woods told inmates at the jail he had shot Wolfe several times, effectively severing one of her legs. RP vol. 19, at 75-77. Robert Hipkins likewise testified that Woods told him the night of the murder that he shot Wolfe. These facts overwhelmingly support every element of aggravated, premeditated first degree murder. We likewise find the untainted evidence overwhelming as to each of the other counts on which Woods was convicted. Because this record provides overwhelming untainted evidence supporting each element of each count on which Woods was convicted, we conclude the trial judge's statement could not have influenced the jury. We therefore hold the trial court's comment was harmless beyond a reasonable doubt as to Woods' convictions on all six counts.

The State argues the Court of Appeals erred in holding the trial judge's comments were not harmless in Lane's case. The court found "Blake's testimony provided the only direct evidence that Lane had aided Woods in murdering Wolfe, and that Lane had premeditated an intent to kill". *Lane*, slip op. at 66. We disagree. The evidence presented at trial suggests Lane and Woods were not operating independently of one

another and Lane was actually the "brains" of the operation. This conclusion is further buttressed by the evidence of the uncharged acts, which the Court of Appeals ruled was improperly admitted. This evidence, which we hold was properly admissible, further demonstrates the interaction among the Defendants and supports a finding of harmless error regarding the judge's comments, as to both Lane and Woods.

## III

We hold the trial court properly admitted the evidence of "other acts" committed within the same proximate timeframe as the crimes charged. Accordingly, the decision of the Court of Appeals is reversed as to counts 1, 2, 3, 4, and 5 against Anderson. We also hold the trial judge impermissibly commented on the evidence, but that in light of overwhelming untainted evidence, his comments constituted harmless error as to all three Defendants. The decision of the Court of Appeals is therefore reversed as to count 4 against Lane and affirmed as to all six counts against Woods.

The Defendants' convictions on all six counts are reinstated.

DURHAM, C.J., DOLLIVER, SMITH, and GUY, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.

MADSEN, J. (dissenting in part) — I must dissent because the majority misunderstands the "res gestae" exception for the admission of uncharged "crimes, wrongs or acts" and as a result reverses a thorough and well-reasoned decision by the Court of Appeals involving evidence of six unrelated incidents of prior misconduct admitted by the trial court. Moreover, I dissent because the majority misapplies the test for harmless error to the judge's comment on the evidence in connection with Defendant Lane.

### RES GESTAE RULE

In *State v. Saltarelli*, 98 Wn.2d 358, 361, 655 P.2d 697 (1982) this court stated that when considering the admission

of prior bad acts under ER 404, the trial court must first consider the logical relevance of such evidence to the charged crime. If evidence meets this threshold requirement, the trial court must determine whether it is necessary to prove an important issue related to the crime charged. If the first two prongs are met, the evidence must still be weighed by the court to insure that the probative value of the prior bad act evidence outweighs the prejudice to the defendant.

Nothing in Washington jurisprudence or rules of court suggests that evidence of prior bad acts admitted under the "res gestae" or "same transaction" exception to ER 404(b) is to be treated in any different manner. As this court stated in *State v. Tharp*, 96 Wn.2d 591, 596, 637 P.2d 961 (1981), "the true test of admissibility of unrelated crimes is not only whether they fall into any specific exception, but whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged".

By its very description as the "same transaction" rule, it is clear that the res gestae exception is intended for situations where the prior bad acts relate to the charged crime. It is not sufficient that the acts occur in close time proximity. The evidence must also be admitted to complete the picture of the crime charged. *Tharp*, at 594. To hold otherwise would open the door to any act which occurred within the days preceding the crime regardless of the relationship to the crime.

The six prior incidents under consideration in this case were, on their face, unrelated to the charged crime and, as the Court of Appeals observed, the State failed to make a record adequate to show relevance. *State v. Lane*, cause 13439-0-II, unpublished opinion noted at 69 Wn. App. 1001 (1993), slip op. at 19. The Court of Appeals correctly held that it is insufficient to simply state that evidence of prior bad acts is relevant because of the proximity in time of those acts to the crime. As that court said, "[w]hether or not that is true, the court must still find a relevant purpose for admitting the evidence . . . the court must determine whether the evidence has

a tendency to make more or less probable a fact of consequence to the action. . . . Here, the State did not request and the court did not make the necessary determinations." *Lane*, slip op. at 16.

The majority attempts to justify the trial judge's decision by stating that the judge admitted the prior bad acts evidence because it showed the degree of participation of the various Defendants. Majority, at 835. That assertion is simply not supported by the record. In announcing his decision to admit the evidence of prior bad acts, the trial judge stated that the evidence should be admitted "primarily just on the basis of the calendar and the clock and this was proximity in time and at least somewhat in proximity and place at least in Tacoma". Verbatim Report of Proceedings vol. 16, at 8. Only in passing did the judge comment that "[A]ny participation or the degree of participation is very much in issue". He did not indicate that the prior acts in question were relevant to the degree of participation nor did he state that he was admitting the evidence on that basis. Verbatim Report of Proceedings vol. 16, at 7-8.

Although the majority criticizes the Court of Appeals for substituting its own analysis, it is the majority, not the Court of Appeals, which is guilty of precisely that by supplying the missing basis for admissibility. As demonstrated above, the trial court here believed that the prior bad act evidence was relevant because of the proximity of those acts in time and place, not because the acts related to the charged crimes. This court should not now supply an unjustified basis for the trial judge's decision to admit otherwise inadmissible evidence and then support that basis under an abuse of discretion standard. Majority, at 835.

After supplying what it considers an adequate basis for admission of the bad acts evidence, the majority then skips blithely over the balancing requirements of ER 403. Its treatment of that issue in this manner is necessary, of course, since the trial court did not engage in any balancing. The trial judge did not mention undue prejudice or probative value in his ruling. Rather, he stated that "I am not going to

spend a lot of time sorting out and editing May 1st". Verbatim Report of Proceedings vol. 4, at 140. Although a trial court's decision to admit may be affirmed in the absence of an explicit, on the record, balancing, to do so the weighing must be clear from the record as a whole. *State v. Gogolin*, 45 Wn. App. 640, 645, 727 P.2d 683 (1986). In this case, it is the absence of weighing which is clear from the record. By not only supplying the basis for admissibility under ER 404(b), but also exempting the trial court from its balancing requirements under ER 403, the majority departs from the well-established requirements for admissibility.

Next, the majority acknowledges, but then ignores, the predicate that the State must show by a preponderance of the evidence that the uncharged crimes both occurred and were committed by the accused. *Tharp*, at 593-94. Here, the trial judge did not make any findings with regard to this requirement nor did he even mention the standard, making it clear that he did not consider the issue. In spite of this, the Court of Appeals painstakingly reviewed the evidence and persuasively concluded that the record could not support a finding that the preponderance standard was met with respect to a number of the challenged incidents. *Lane*, slip op. at 22-26.

The majority appears to forget that it is the role of the trial court to determine the relevancy of evidence, weigh the evidence to determine whether it satisfies the preponderance standard, and decide whether the probative value of the evidence outweighs the prejudice which the evidence may inject. This case should be remanded in accordance with the decision of the Court of Appeals.[3] As that court concluded, the challenged prior bad acts evidence "served

---

[3]The Court of Appeals' 69-page opinion is unpublished so it must be stated that Judge Morgan thoroughly analyzed each of the six incidents of prior misconduct as it related to each of the three individual Defendants. He also analyzed the effect of admitting evidence of each incident on each of the six counts against each of the three Defendants. Finding harmless error, the court affirmed all of Woods' convictions and all of Lane's convictions except count 4, first degree murder. As to Anderson, the court affirmed count 5, first degree robbery, but found reversible error as to the remaining counts.

only to establish defendants' bad character, a purpose forbidden under ER 404(a)". *Lane*, slip op. at 20.

## Comment On The Evidence

Although recognizing that the judge's comment on the credibility of witness Blake was error, the majority declines to affirm the Court of Appeals' conclusion that the error requires reversal because it misapplies the test for harmless error. This court has adopted the "overwhelming untainted evidence" test to determine whether an error of constitutional magnitude requires reversal. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). Under this test, the reviewing court considers whether there is any reasonable possibility that the use of inadmissible evidence was necessary to reach a guilty verdict. *Guloy*, at 426. To find harmless error, the reviewing court must be convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *Guloy*, at 425. The State bears the burden of proving beyond a reasonable doubt that the error was harmless. *Guloy*, at 425.

Despite the majority's recognition of the overwhelming untainted evidence test as the correct analysis, the majority fails to analyze the probable effect of the tainted evidence on the jury's verdict. As the Court of Appeals recognized, "Blake's testimony provided the only direct evidence that Lane had aided Woods in murdering Wolfe, and that Lane had premeditated an intent to kill". *Lane*, slip op. at 66. Blake provided the motive of revenge for Lane. The importance of this evidence is made clearer by contrasting the result in Anderson's case. Assuming for the sake of this argument that the prior misconduct evidence was properly admitted, evidence was presented that both Anderson and Lane participated in the crime spree which culminated in the abduction of the murder victim. Both Anderson and Lane entered the victim's home, assisted in the kidnapping, and drove the victim to the deserted road where she was killed by Defendant Woods. Neither Lane nor Anderson was

present when Woods shot the victim. Yet the jury found that Lane committed premeditated murder while it found that Anderson did not. Aside from the prior burglary of the victim's home by Lane and Woods several months earlier, the principal difference between the actions of Lane and Anderson is that Lane was attributed with a revenge motive through Blake's statement that Lane admitted the killing was done in revenge. Thus, the difference in the jury's verdict very probably resulted from Blake's testimony.

Nor can the rest of the evidence be said to support a finding of premeditation. Lane and Anderson remained in the car during the murder. They heard several shots which prompted Anderson to ask Woods, when he returned to the car alone, if the victim was dead. The first six or more shots fired by Woods were aimed at the victim's leg. This suggests that the initial intent was to disable the victim rather than to kill. It was when the victim attempted to rise that the single, fatal shot was fired. This evidence shows that the intent to kill may well have been formed by Woods in the moments before he fired the last shot. It is inescapable then that a very reasonable possibility exists that the tainted evidence was necessary to reach a guilty verdict in this case. Thus, it is certainly not clear beyond a reasonable doubt that the jury would have convicted Lane of premeditated murder absent this tainted evidence.

Finally, it is disturbing that the majority, not the State, attempts to make the case. At trial, the State agreed with the Defendants that the comment was improper and urged the judge not to make it. In its brief to this court, the State fails to provide any meaningful analysis of the harmless error test as applied to the facts and instead offers a conclusory, 3-sentence argument which is insufficient to support a finding of harmless error beyond a reasonable doubt.

In contrast, the Court of Appeals in this case carefully analyzed the issue of harmless error as to each Defendant. The court considered the record and correctly concluded that "the trial court's comment on the evidence cannot be labelled as

harmless beyond a reasonable doubt". *Lane*, slip op. at 67. I agree and would affirm the decision by the Court of Appeals.

UTTER, J., concurs with MADSEN, J.