# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 74315-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CHARLES CHRISTOPHER | ) | |
| LANGSTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 30, 2017 |
| | ) | |

MANN, J. — A jury convicted Charles Langston of (1) identity theft in the second degree and (2) theft in the second degree. Langston appeals one evidentiary issue: whether the trial court abused its discretion when it admitted his admission to police officers that he was involved in another theft they were investigating. Langton argued that the statement was inadmissible under ER 404(b). The trial court disagreed, concluding that because Langston's statement was allowed following a CrR 3.5 hearing, it was admissible. The trial court abused its discretion. A determination that a statement was voluntarily obtained and admissible under CrR 3.5, is not the same as a determination that the statement is otherwise admissible under the Rules of Evidence.

While the error was harmless with respect to Langston's conviction for second degree identity theft, it was not harmless as to Langston's conviction for second degree theft. Accordingly, we affirm Langston's identity theft conviction, but vacate and remand Langston's theft conviction for a new trial.

## FACTS

In early April 2015, Eddie Lee Robinson lost his wallet. The next day, he cancelled and reported his driver's license, social security, and bank cards as stolen.

On April 16, 2015, Edmonds police officers were dispatched to investigate an unrelated report of a stolen cell phone from an AT&T store. Edmonds Police Officer Nicholas Bickar saw two people who matched the suspects' descriptions in a casino across the street from the cell phone store. Bickar made contact with the suspects and asked if he could speak with them. They agreed. Bickar was soon joined by two other police officers. Bickar asked the suspects if they had been at the AT&T store. The suspects admitted that they had been at the AT&T store.

This prompted Bickar to ask Langston, one of the suspects, for his identification. Langston identified himself as Eddie Lee Robinson. Langston gave Robinson's date of birth and produced Robinson's social security card. After running the identification that Langston provided (Robinson's), the police became suspicious that Langston was not Robinson. A casino manager who had overheard the conversation retrieved a copy of Langston's true identification, which the casino had on file, and gave it to the police. The officers then correctly identified Langston, discovered his outstanding warrants, and arrested him.

Following Miranda[1] warnings, Langston admitted that he found Robinson's wallet on the bus the day before, and in an effort to avoid being arrested on his warrants, told the police he was someone else.

The State charged Langston with (1) second degree identity theft committed while on community custody and (2) second degree theft. The State alleged that Langston used the identity of Robinson with the intent of misleading a public servant while the servant was acting in its official capacity, a crime under RCW 9A.76.175.

At the CrR 3.5 hearing on the admissibility of Langston's statements, the three officers testified about the reported theft and Langston's explanation of his involvement. The court found Langston's statements admissible.

Before trial, Langston moved "to exclude any references to arrests or other wrongful conduct not charged, to include, but not limited to any theft (cell phone) and obstructing a public servant, pursuant to ER 404(b)." The trial court granted in part and denied in part this motion. The court ruled that testifying officers could only say they were "investigating a theft," but that Langston's statement about being involved in the cell phone incident was admissible. The court reasoned that "the full statement . . . has already been deemed to be admissible." The court explained that "[t]he statement is what it is. If [Langston] made statements that were adverse to his own interests, that's on him."

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At trial, all three police officers testified that they were responding to a report of a cell phone theft.[2] The first officer to testify, Officer Strum, was asked to describe his initial contact with Langston. Strum testified:

> So I asked him what was going on with regard to the reason why I was contacting them, and they said that they were involved in that.[3]

Langston did not object.

Officer Bickar, the second officer called, was also asked about his initial contact with Langston. Bickar started to testify about Langston's admission concerning the cell phone store but was cut off by Langston's objection. The court heard argument outside the presence of the jury and sustained Langston's objection.

Officer Clark, the last officer called, testified that he responded to assist in the other officers' theft investigation and to "assist with taking Mr. Langston into custody."[4] Officer Clark confirmed that they were responding to the theft of a cell phone and that the "theft occurred across the street from where Mr. Langston was located."[5]

Langston took the stand and testified that although he found Robinson's wallet on a bus a day and a half before his arrest, he intended to return it and did not use any of the cards (besides the social security card) in it.[6] At closing argument, Langston again argued that he did not intend to steal Robinson's wallet and pointed out that he

---

[2] Report of Proceedings (RP) (Aug. 24, 2015) at 47-48; RP (Aug. 24, 2015) at 55 (Officer Bickar); RP (Aug. 24, 2015) at 66 (Officer Clark).
[3] RP (Aug. 24, 2015) at 49.
[4] See RP (Aug. 24, 2015) at 66-67.
[5] See RP (Aug. 24, 2015) at 66-67.
[6] See RP (Aug. 24, 2015) at 78-85.

had not used the wallet for financial gain at the casino or anywhere else a day and a half after finding it.[7]

Langston was found guilty of second degree identity theft and second degree theft. He appeals the trial court's decision allowing his admission to involvement in a theft separate from the charged conduct.

## ANALYSIS

### I.

Langston argues that the trial court abused its discretion when it allowed Officer Strum to testify that Langston admitted he was "involved in" the theft they were investigating. We first address whether Langston preserved this issue for appeal. The State argues that he did not because he failed to object to the statement. The State cites the general rule that when no objection is made to the evidence at trial, an evidentiary error is not preserved for appeal. The State is partially correct.

When evidentiary rulings stem from a motion in limine, the losing party is deemed to have a standing objection where a judge has made a final ruling on the motion, unless the trial court indicates that further objections at trial are required when making its ruling. State v. Powell, 126 Wn.2d 244, 256, 893 P.2d 615 (1995) (internal quotations omitted). In Langston's case, the trial court granted in part and denied in part the motion, and the court did not indicate that Langston needed to object again at trial. As the losing party, Langston had a standing objection. This standing objection preserved the statement for appeal.

---

[7] See RP (Aug. 25, 2015) at 141-49.

II.

Over Langston's pretrial objection, the trial court allowed the State to present evidence that Langston admitted being involved in another theft the arresting officers were investigating based solely on the statement being allowed under CrR 3.5. Langston argues that this was an abuse of the court's discretion. We agree.

Evidentiary rulings are reviewed for abuse of discretion. State v. Davis, 175 Wn.2d 287, 318, 290 P.3d 43 (2012). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Davis, 175 Wn.2d at 318.

A.

In his pretrial motion in limine, Langston argued that his admission to being involved in the cell phone theft investigation was inadmissible under the Rules of Evidence. Evidence must be relevant to be admissible. ER 402. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination more or less probable than without the evidence. ER 401. Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. But this evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). ER 404(b) admissibility requires a two-part analysis: (1) the evidence sought to be admitted must be relevant to a material issue and (2) the evidence's probative value must outweigh its potential for

prejudice. State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). The trial court must identify the purposes for which it admits evidence under an ER 404(b) analysis on the record. Lane, 125 Wn.2d at 832.

Here, rather than determining whether Langston's statement was admissible under ER 404(b), the trial court concluded that because the statement was voluntarily obtained and admissible under CrR 3.5, it was admissible. This is incorrect. As this court explained in State v. Viney:

> A determination that a statement was voluntarily obtained and admissible under CrR 3.5, is not the same as a determination that the statement is otherwise admissible under the Rules of Evidence. A CrR 3.5 hearing is a threshold determination of whether a custodial statement was obtained with the proper regard for the defendant's rights. That is, the issue in a CrR 3.5 hearing is constitutional, not evidentiary. The trial court does not address the contents of a statement, but rather addresses the circumstances under which the statement is made. Further analysis at trial of admissibility under the Rules of Evidence is not foreclosed.

52 Wn. App. 507, 510, 761 P.2d 75 (1988).

Here, simply because Langston's statement was voluntary under CrR 3.5 did not mean that it was admissible under ER 404(b). The trial court's decision was untenable. Viney, 52 Wn. App. at 510. The court abused its discretion by basing its ruling on untenable grounds.

B.

The State argues that Langston's admission fits within the *res gestae* exception to ER 404(b). Washington courts recognize a *res gestae* or "same transaction" exception to ER 404(b). The *res gestae* exception makes "evidence of other crimes admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Lane, 125 Wn.2d at 831 (internal quotations

omitted). Evidence is properly admitted under the *res gestae* exception if it is necessary to depict a complete picture for the jury. State v. Filitaula, 184 Wn. App. 819, 825, 339 P.3d 221 (2014) (citing Lane, 125 Wn.2d at 832)).

Here, the State charged Langston with using Robinson's identity with the intent to commit the crime of making a false statement to a public servant who was acting in an official capacity. See RCW 9.35.020(1); RCW 9A.76.175. The State maintains that if the jury had not heard Langston's admission of involvement in their theft investigation, then it would not know whether the officers were acting in their official capacity when they asked Langston for his identification.

Langston's admission does not fit within the *res gestae* exception to ER 404(b) because it is not relevant to the crimes that Langston was charged with, second degree identity theft and second degree theft of a wallet. As the State points out on appeal, the admission only showed that the officers were acting in their official capacities when Langston identified himself as Robinson. But the State did not need to prove this fact in order to convict Langston of second degree identity theft under RCW 9.35.020(1). See State v. Fedorov, 181 Wn. App. 187, 197-98, 324 P.3d 784 (2014) (holding that the State is not required to state the elements of the "crime" the defendant intended to commit in order to secure a conviction for second degree identity theft under RCW 9.35.020(1)). Langston's "to convict" jury instruction omitted the elements of making a false or misleading statement to a public servant under RCW 9A.76.175, the "crime" under RCW 9.35.020(1).

Since the State was not required to prove that the officers were acting in their official capacities when Langston lied about his identity, Langston's admission of

-8-

involvement in the cell phone theft was irrelevant. Langston's admission of involvement in the cell phone theft was not *res gestae* evidence because it did not "complete the story of the crime on trial." Lane, 125 Wn.2d at 831.

III.

We must determine whether the error was harmless. Nonconstitutional evidentiary error is harmless unless the error with reasonable probability materially affected the outcome of the trial. State v. Gower, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014) (applying nonconstitutional harmless error analysis to erroneous admission of evidence under ER 404(b)). We must determine if "there is a reasonable probability that the outcome of the trial would have been different without the inadmissible evidence." Gower, 179 Wn.2d at 857. We conclude that there is not a reasonable probability that the error materially affected the outcome of the second degree identity theft conviction, but that there is a reasonable probability that the error materially affected the outcome of the second degree theft conviction.

A.

The error is harmless as to Langston's conviction for second degree identity theft. Langston testified that he produced Robinson's social security card when the police officers asked him for his identification.[8] He did this in an attempt to conceal his identity so that the officers would not discover his outstanding arrest warrants.[9] Langston's testimony amounted to an admission to the charge of second degree identity

---

[8] See RP (Aug. 24, 2015) at 80-81.
[9] See RP (Aug. 24, 2015) at 81.

theft and an intent to mislead a public servant.  See RCW 9.35.020(1); RCW 9A.76.175. Langston's admission to involvement in the theft investigation was irrelevant.

B.

There is, however, a reasonable probability that Langston's admission materially affected his conviction for second degree theft.  Langston's admission that he was involved in the cell phone theft likely damaged his credibility because it made him look like a thief generally.  Evidence that Langston told officers he was involved in the cell phone theft made it more likely that jurors would not believe Langston's testimony that he did not intend to steal the wallet.  There is a reasonable probability that Langston's second degree theft charge would have turned out differently without the inadmissible evidence.  Thus, we reverse Langston's second degree theft charge and remand for a new trial.

III.

Langston prevails in part on appeal and requests that we exercise our discretion to deny the State appellate costs.  The State requests fees under RCW 10.73.160.

This court has discretion to deny an award of appellate costs if the State substantially prevails on appeal.  RCW 10.73.160; State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 (2016), review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016); RAP 14.2.  Because the State does not substantially prevail on appeal, we determine that no appellate costs should be awarded to the State.

## CONCLUSION

We affirm Langston's second degree identity theft conviction. We vacate Langston's conviction for second degree theft and remand for a new trial.

Mann, J.

WE CONCUR:

Spearman, J.