IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ISABELLA BIANCHI, individually, | ) | No. 82793-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAYMOND WAGONBLAST and JANE | ) | UNPUBLISHED OPINION |
| DOE WAGONBLAST, husband and | ) | |
| wife and the marital community | ) | |
| comprised thereof, if any, and as | ) | |
| individuals, | ) | |
| | ) | |
| Appellants. | ) | |

BOWMAN, J. — A jury awarded Isabella Bianchi $600,000 for general damages suffered from a car crash caused by Raymond Wagonblast. Wagonblast moved for a new trial under CR 59(a)(8), alleging the trial court erred by admitting irrelevant evidence about Bianchi's mental health issues and miscarriage. The trial court denied the motion. Wagonblast appeals the order denying his motion for a new trial and the judgment on the jury's verdict. Because Wagonblast fails to show error that materially affected his substantial rights at trial, we affirm.

FACTS

On February 12, 2015, Wagonblast and Bianchi were driving south on Interstate 5 when Wagonblast rear-ended Bianchi, "causing her vehicle to spin and collide into the rear of a third vehicle." In December 2017, Bianchi sued

Citations and pin cites are based on the Westlaw online version of the cited material.

Wagonblast[1] for negligence, alleging she suffered persistent neck and back pain from the crash. In June 2019, Wagonblast stipulated to liability.

Before the 2021 trial, Wagonblast moved to exclude all testimony about Bianchi's mental health as irrelevant. He argued that Bianchi's expert, physiatrist[2] Dr. David Spanier, was not qualified to offer an opinion about whether the crash caused or exacerbated Bianchi's mental health issues. The trial court granted Wagonblast's motion to exclude expert testimony that the collision "aggravated" Bianchi's mental health issues. But it denied his request to exclude all mental health evidence. The court ruled that Bianchi could testify "in relation to her mental health . . . as background information, as most witnesses are allowed to explain their background." And the court permitted Dr. Spanier to testify he "reviewed records that [Bianchi] was struggling" and "generally about what kind of psychological services . . . she received." Shortly after the trial court's ruling, Wagonblast agreed to admit several of Bianchi's unredacted medical records between 2015 and 2020, detailing her injuries and mental health issues.

Wagonblast also moved to exclude evidence of a miscarriage Bianchi suffered about two weeks after the crash.[3] He argued the miscarriage was "extremely prejudicial" and not relevant because no evidence showed it resulted

---

[1] Bianchi also named Jane Doe Wagonblast in the complaint, asserting claims against the marital community and individually.

[2] A physiatrist specializes in physical medicine and rehabilitation.

[3] Wagonblast also moved to exclude evidence of a 2019 miscarriage and 2021 birth on the same grounds. The court granted the motion as to the 2019 miscarriage. It allowed Bianchi to testify only that her doctor told her to stop taking muscle relaxers for neck and back pain when she became pregnant with her daughter in 2020.

from the crash. Wagonblast pointed to the parties' June 2019 "Stipulation and Order of Limited Dismissal of Claim" in which the parties agreed that the "miscarriage is not related to the subject motor vehicle accident," and that Bianchi's "claims of miscarriage against [Wagonblast] are dismissed in whole with prejudice and without costs."

Bianchi agreed that the miscarriage evidence would not be admissible as a claim for damages but argued that the court should admit the evidence to explain why she delayed seeking treatment for neck and back pain for about six weeks after the crash. The trial court admitted the evidence solely to explain the "gap in care" and asked each party to submit a proposed limiting instruction. Ultimately, the court adopted Wagonblast's proposed instruction with some modifications.

The April 2021 trial proceeded on the "nature and extent" of Bianchi's injuries. Bianchi, who was 22 years old at the time of the 2015 car accident, testified that she struggled with obsessive-compulsive disorder (OCD) and anxiety since she was a "young child." She said that she continued to experience mental health issues during her teenage years, including OCD, depression, and self-harm, and that she experienced depression and anxiety after the crash. She told the jury that her primary care physician "officially diagnosed" her with bipolar disorder in 2017. Bianchi also testified that when the car crash happened in 2015, she miscarried "[a]round the 1st of March," and that she did not start physical therapy to treat her injuries until the end of March because she was "really overwhelmed."

Dr. Spanier testified that "as a physiatrist, I like to address the whole person." He told the jury that Bianchi started seeing a psychologist in summer 2015, which helped her recovery because mental health "impacts" physical health. Dr. Spanier testified, "If there is worsening pain, in my experience, that can worsen mental health issues; and, furthermore, if one has a lot of mental health issues they're dealing with, it can amplify symptoms of physical pain."

Bianchi asked for general damages, including pain and suffering and emotional distress. The jury awarded Bianchi $600,000 for past and future general damages. Wagonblast then moved for a new trial under CR 59(a)(8), arguing the trial court erred by admitting evidence about Bianchi's mental health issues and 2015 miscarriage.[4] He argued the evidence caused the jury to base their verdict on passion and prejudice. The trial court denied the motion.

Wagonblast appeals.

## ANALYSIS

Wagonblast argues that the trial court erred by denying his request for a new trial under CR 59(a)(8) because "irrelevant, non-expert testimony suggested that the collision harmed Bianchi's mental health," and "irrelevant testimony regarding Bianchi's unrelated miscarriage" deprived him of a fair trial.

"A court may grant a motion for a new trial when important rights of the moving party are materially affected because substantial justice has not been done." Ramey v. Knorr, 130 Wn. App. 672, 686, 124 P.3d 314 (2005). CR

---

[4] Wagonblast argued the court also erred in allowing testimony about the birth of Bianchi's daughter in 2021 under CR 59(a)(8), and moved for a new trial under CR 59(a)(5) and (7) as well. He does not appeal the trial court's denial of a new trial on these grounds.

59(a)(8) provides for a new trial if the court committed an error of law during the trial, the party seeking a new trial objected to the error, and it "materially affect[s] the substantial rights" of the party seeking a new trial. The error of law must be prejudicial. M.R.B. v. Puyallup Sch. Dist., 169 Wn. App. 837, 848, 282 P.3d 1124 (2012). We review de novo whether a trial court based its denial of a motion for a new trial on an error of law. Id.

Under ER 402, "[a]ll relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided" by statute or rule, and "[e]vidence which is not relevant is not admissible." Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. But relevant evidence

> may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

ER 403.

Mental Health Testimony

Wagonblast argues that the court committed an error of law by allowing Bianchi "to opine on her own mental health conditions" despite the lack of expert testimony that the crash caused or exacerbated her mental health issues. Even assuming the trial court erred in admitting testimony about Bianchi's mental health, Wagonblast shows no prejudice.

Shortly after the trial court ruled on Wagonblast's motion to exclude evidence of Bianchi's mental health, Wagonblast agreed to admit several of her

5

medical records as exhibits. The records range from February 12, 2015, the date of the crash, to November 4, 2020, and show Bianchi suffers from several mental health issues. They discuss Bianchi's "[c]hronic depression" and recommend monitoring for "possible suicidal ideation." The records state that Bianchi "had cutting behavior in [the] past" and that she takes medication for depression and anxiety. They contain "Patient Health Questionnaire[s]" documenting the severity of Bianchi's "depression/anxiety" symptoms and the medications she takes to control them, as well chart notes for several "follow-up" visits that discuss her depression, anxiety, and medications. Wagonblast made no motion to redact the records.

Because Wagonblast agreed to admit records containing at least the same information about Bianchi's mental health that she and Dr. Spanier testified to, he cannot now complain that the evidence prejudiced him. Feldmiller v. Olson, 75 Wn.2d 322, 325, 450 P.2d 816 (1969) ("[e]rror in the admission of evidence is without prejudice when the same facts are established by other evidence").

Wagonblast argues that the records made just "[p]assing references to Bianchi's mental health history" and do not "render extensive lay trial testimony about her mental health problems . . . 'cumulative.' " But the trial record does not support his argument. The medical records spanned over five years and contained detailed information about Bianchi's mental health. Wagonblast fails to show that the court's admission of testimony about Bianchi's mental health history materially affected his rights at trial.

Miscarriage Testimony

Wagonblast argues that the trial court committed an error of law by admitting "highly prejudicial" evidence of Bianchi's miscarriage, which was unrelated to the crash.[5]  Again, Wagonblast fails to show prejudicial error.

The trial court ruled that evidence of Bianchi's miscarriage was admissible only to show why she delayed seeking treatment for her injuries.  The court recognized the potential prejudice in the evidence and asked the parties to propose limiting instructions to guard against the jury considering the evidence for an improper purpose.  The court ultimately adopted Wagonblast's proposed instruction with its own modification.[6]

Before opening statements, the court read the following limiting instruction to the jury:

> There is no evidence that a miscarriage was caused by the accident of February 12, 2015.  The plaintiff will present evidence of Ms. Bianchi's miscarriage in this case solely limited for the purpose of showing her delay in care in the first six weeks following the collision.  The evidence presented in this trial may be considered by you for only this purpose.  You are not to consider this evidence for

---

[5] Wagonblast also argues that the trial court abused its discretion by denying his request for a mistrial after he learned the court would admit the evidence about Bianchi's 2015 miscarriage.  We consider his request a motion to continue the trial.  Wagonblast argued that he "was not prepared to litigate [the miscarriage], given the stipulation," and asked the court to "continue[ ] the trial until May" so he could prepare for the unexpected testimony.  But the record shows Wagonblast was aware of the miscarriage evidence at least several weeks before trial. The trial court did not abuse its discretion in denying the motion to continue.  See St. Romaine v. City of Seattle, 5 Wn. App. 181, 182, 486 P.2d 1135 (1971) (we reverse denial of a motion to continue only when court manifestly abused its discretion); State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

[6] The court removed one paragraph of "legalese" from Wagonblast's proposed instruction.  Wagonblast did not designate his proposed instruction as part of the record on appeal, so we cannot review whether removal of the language was error.  See Popovich v. Dep't of Labor & Indus., 66 Wn.2d 908, 909-10, 406 P.2d 593 (1965) ("All instructions given by the trial court and those requested and refused concerning which error is assigned must be included" in the record on appeal.).

any other purpose.  Any discussion of the evidence during your deliberations must be consistent with this limitation.

The court read the jury the limiting instruction again during Bianchi's testimony.

The instruction adequately directed the jury to consider the evidence solely to explain why Bianchi delayed seeking treatment for her injuries.  We presume jurors follow the court's instructions.  State v. Weaver, 198 Wn.2d 459, 469, 496 P.3d 1183 (2021).

Wagonblast argues that because the court read the limiting instruction before any testimony about the miscarriage, and Bianchi did not ultimately testify that the miscarriage delayed her treatment, the limiting instruction was a prejudicial "judicial comment on the evidence."  According to Wagonblast, the jury instruction "tipped the scale in Bianchi's favor" because it told the jury to believe that "the evidence would show Bianchi delayed care because of the miscarriage," that "the trial court accepted and believed Bianchi's miscarriage rationale for delaying care," and that "Bianchi's theory of the case should be given special attention, to the detriment of Wagonblast's theory."  We disagree.

A statement by the court amounts to a comment on the evidence "if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement."  State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).  But Wagonblast drafted the language of the limiting instruction.  And he asked the court to read the instruction to the jury before opening statements.  A party cannot set up an error then complain of it on appeal.  City of Seattle v. Patu, 147 Wn.2d 717, 720, 58 P.3d 273 (2002).

We also reject Wagonblast's claim that Bianchi did not testify that the miscarriage caused her to delay seeking treatment. Bianchi testified that she had a miscarriage at the beginning of March 2015. She then said that she did not start physical therapy until the end of March because she "just was really overwhelmed." From that testimony, the jury could reasonably infer that Bianchi delayed seeking care because she was overwhelmed after having a miscarriage.

Because Wagonblast shows no error that materially affected his substantial rights at trial, the court did not err in denying his motion for a new trial under CR 59(a)(8). We affirm the order denying the motion and the judgment on the jury's verdict.

Brennan, J

WE CONCUR:

Smith, A.C.J.

Dwyer, J.